UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SHERWOOD BRANDS, INCORPORATED,
Plaintiff-Appellant,

v.                                                                No. 95-2847

PALLY HOLLAND, B.V.,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-95-1972-AW)

Argued: October 30, 1996

Decided: January 3, 1997

Before HALL and ERVIN, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Albert David Brault, BRAULT, GRAHAM, SCOTT &
BRAULT, Rockville, Maryland, for Appellant. Niccolo Nunzio Don-
zella, SHAPIRO & OLANDER, Baltimore, Maryland, for Appellee.
**ON BRIEF:** Daniel L. Shea, BRAULT, GRAHAM, SCOTT &
BRAULT, Rockville, Maryland, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Sherwood Brands, Inc., appeals the order dismissing its breach-of-contract action against Pally Holland, P.V., on the basis of a contractual choice-of-forum clause. We affirm.

I

Pally is a Dutch company that makes dessert biscuits, and Sherwood is an American company that distributes the biscuits in the United States. In May 1990, the companies entered into a contract making Sherwood the exclusive distributor of Pally biscuits in the United States except for certain areas in New York.

Claiming that Sherwood was not paying its bills on time, Pally terminated the agreement in February 1994. In order to resume business, the parties entered into two agreements--"protocols"--to govern their legal relationship pending negotiations for a new contract. Protocol #1, which was dated May 16, 1994, expressly noted that the "existing contractual relationship"--the 1990 contract--would govern except to the extent changed by the protocols. These interim agreements primarily dealt with letters of credit to be established by Sherwood to guarantee payment for future orders. Neither protocol mentioned choice of forum.

In the spring of 1995, things began to break down again, and, in June, Sherwood filed a complaint in Maryland state court alleging that Pally had breached the 1990 contract by allowing other distributors to operate in areas that were exclusively Sherwood's. After removing the case to federal court, Pally moved to dismiss on the basis of § 10 of the 1990 contract, which provides as follows:

2

Governing Law and Disputes

a. In case Sherwood decides to start a legal procedure against Pally over disputes between parties emanating from this agreement or being connected therewith, direct or indirect[,] these disputes shall be judged by the competent judge according to the normal standards of competency of the Netherlands.

b. In case Pally decides to start a legal procedure against Sherwood over disputes between parties emanating from this agreement or being connected therewith, direct or indirect, these disputes shall be judged by the competent judge according [to] the normal standards of competency of Rockville, Maryland - U.S.A.

Sherwood opposed the motion on the grounds that either § 10 was not a choice-of-forum clause, or if it was, negotiations begun in 1993 had resulted in a superseding agreement as of March 1993 (of which the two protocols were subsequent short-term arrangements) that contained only a choice-of-law (Maryland's) clause but no provision for choice of a forum.

The district court ruled that § 10 was indeed a forum selection clause and, further, that "the 1993 so-called agreement was at best an agreement to agree. It was a proposal. It was a draft."**1** The court also denied Sherwood's motion to alter or amend judgment, and Sherwood appealed.

II

We first address the district court's ruling that§ 10 of the 1990 contract is a forum selection provision. "[I]nterpretation of a written contract is a question of law subject to de novo  appellate review."

_____

**1** The court initially ruled from the bench and entered an order simply granting the motion to dismiss. A written opinion was later issued with regard to the denial of Sherwood's Fed. R. Civ. P. 59(e) motion. Sherwood Brands, Inc. v. Pally Holland, P.V., Civil No. AW-95-1972 (D. Md. Sept. 15, 1995) (Memorandum Opinion).

3

Scarborough v. Ridgeway, 726 F.2d 132, 135 (4th Cir. 1984) (citations omitted). Under the substantive law of Maryland, which we are obliged to apply in this diversity case, we must"determine from the language of the contract itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." General Motors Acceptance Corp. v. Daniels, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985). The district court found the provision to be free of ambiguity, thereby obviating resort to extrinsic evidence. Sherwood contends that the district court erred by failing to look beyond the words of the contract in interpreting the clause.

Though § 10 is not a model of clarity, the term "competent judge" certainly refers to a court having subject matter jurisdiction.[2] See Black's Law Dictionary 257 (6th ed.) ("Competent authority. As applied to courts and public authority, this term imports jurisdiction and due legal authority to deal with the particular matter in question."). In view of Sherwood's failure to suggest any reasonable alternative interpretation, its argument that the clause is at least ambiguous is meritless. The clause, then, is clearly a mandatory ("shall be judged") forum-selection provision, and there is no need to look elsewhere to discover if the parties' intent may have been otherwise. See World-Wide Rights L.P. v. Combe Inc., 955 F.2d 242, 245 (4th Cir. 1992) ("If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law. . . .").

III

Next, we consider the district court's rejection of the contention that the 1990 contract had been superseded. "Summary judgment is . . . appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Russell v. Microdyne Corp., 65 F.3d 1229, 1240 (4th Cir. 1995).[3] Sherwood's

_____

2 Forum clauses are "an almost indispensable precondition to the achievement of the orderliness and predictability essential to any international business transaction." Sherk v. Alberto-Culver Co., 417 U.S. 506, 516 (1974).
3 Although the district court denominated its judgment as one granting Pally's "motion to dismiss," the order appealed from is properly deemed

4

argument is that there are genuine factual issues about whether the parties had reached a new agreement, one with no forum-selection provision.

Apart from the two protocols, which simply kept the business relationship going by setting out such details as short-term payment procedures, there are no other signed agreements. Sherwood relies heavily on a snippet in Koenders' (Pally's president) notes from a January 1993 meeting about there being "no disagreement about the content" of proposals for a new contract. However, on May 3, 1993, in response to a later draft contract prepared by Sherwood that was based on that same meeting, Koenders wrote that"the legal department was not happy with your [Sherwood's] counter proposal." This is hardly the stuff of binding contracts. Even viewed in the light most favorable to Sherwood, the numerous writings produced pertain only to negotiations aimed at a new agreement to be formalized by a writing signed by both.**4** See, e.g., Bat Masonry Co., Inc. v. Pike-Paschen Joint Venture III, 842 F. Supp. 174, 177 (D. Md. 1993) ("The fact that the parties intend to have a formal contract drawn is evidence that

_____

an order granting summary judgment because, in addition to construing the alleged choice-of-forum clause, the court had to examine matters outside the pleadings to determine whether the 1990 agreement had been superseded. See Fed. R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .")

**4** These writings include a January 1993 "draft" prepared by Pally, which provides that "the rights and duties of the parties shall be governed by and construed in accordance with the laws of the State of Maryland"; Koenders' handwritten notes from a meeting in March, 1993, that note there was "no disagreement about the content" of the draft contract, but adding that "the wording was very legal and thereby not always easy to understand. The principles has [sic] been agreed. Sherwood will work on a simplified more structured (commercial) draft"; and a memorandum from Koenders to Sherwood's president regarding"open issues," and which promised to "come with a proposal for the new agreement by September . . . . The proposal will cover all items that we have discussed. After agreeing on the content I'll ask our attorney to put it in proper legal writing. My goal is that we both sign the contract during my next stay in November."

5

they do not intend previous negotiations to amount to a binding contract.") (quotation omitted); <u>Peoples Drug Stores, Inc. v. Fenton Realty Corp.</u>, 62 A.2d 273, 275-76 (Md. 1948) (same). Sherwood has simply failed to develop sufficient evidence that the parties ever reached any unwritten agreement that displaced the 1990 contract.

IV

After Pally filed its motion to dismiss with an accompanying memorandum of law and exhibits, Sherwood filed an opposing memorandum with more exhibits. Then, as allowed by the local rules, Pally filed a reply to the opposition with even more exhibits, including an affidavit by Koenders. Sherwood then filed a "supplemental opposition" that included an affidavit in which Sherwood's president, Frydman, averred that Koenders' handwritten notes were evidence that an agreement had been reached as early as March 1993, and that Sherwood had specifically agreed that the parties' relationship would be governed by the laws of Maryland.

Pally moved to strike this "supplemental opposition" on the ground that it violated local rules and that the Frydman affidavit contradicted the original complaint. <u>See</u> Local R. 105(2)(a) (surreply prohibited without leave of court). In the complaint, which was initially filed in state court and which was verified by Frydman, injunctive relief was sought under the terms of the <u>1990</u> agreement. Pally argued that Frydman could not be permitted to contradict that pleading and now say in the affidavit that the 1990 agreement had been superseded by a 1993 agreement.

The district court granted the motion to strike on the ground that the "supplemental opposition" was not permitted under the local rules. Sherwood complains that the district court should have considered the Frydman affidavit because Fed. R. Civ. P. 6(d), which takes precedence over any conflicting local rule, allows opposing affidavits to be served the day before a hearing. Frydman's assertion--that an agreement was reached, and that Koenders' notes dated March 1, 1993, "evidences the agreement"--is nothing more than a statement of Sherwood's legal argument, and, as we have already found, that argument finds inadequate support in the record. We find no abuse of discretion on the court's decision to exclude this affidavit. <u>See Supermarket of</u>

6

Marlington, Inc. v. Meadows Gold Dairies, Inc., 71 F.3d 119, 126 (4th Cir. 1995) (holding that a court reviews evidentiary rulings in summary judgment setting for abuse of discretion).

AFFIRMED

7